**FILED**
**CLERK**

**6/11/2026**

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------X
FREDDY MOROCHO,

        *Plaintiff,*

    -against-

UNITED STATES OF AMERICA,

        *Defendant.*
------------------------------------------------X
WENDY LISSETTE DIAZ ESPERANZA,

        *Plaintiff,*

    -against-

UNITED STATES OF AMERICA,

        *Defendant.*
------------------------------------------------X

**OPINION**
**AND ORDER**

23-cv-09431 (JMW)

**A P P E A R A N C E S:**

Barry J. Ungar
**Constantinidis & Associates, P.C.**
2492 Merrick Road
Bellmore, New York 11710
*Attorneys for Plaintiff Freddy Morocho*

Stuart M. Rissoff
2492 Merrick Road
Bellmore, New York 11710
Attorney for Plaintiff *Wendy Lissette Diaz Esperanza*

1

Alina Austin
Special Assistant United States Attorney
**United States Attorney's Office**
Eastern District of New York
610 Federal Plaza, 5th Floor
Central Islip, New York 11722
*Attorney for Defendant*

**WICKS**, Magistrate Judge:

Plaintiffs Freddy Morocho ("Morocho") and Wendy Lissette Diaz Esperanza ("Diaz" and collectively with Morocho, the "Plaintiffs") commenced independent actions against Defendant, United States of America ("Defendant") under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §2671 *et. seq.*, and § 1346(b)(1), alleging personal injuries and negligence caused by the Defendant and seeking damages. (*See generally*, ECF No. 1.) These cases have been consolidated into the leading case of *Morocho*. (*See* ECF No. 16.) Now before the Court is Defendant's Motion for Summary Judgment (ECF Nos. 32-35, 40-44), which is opposed by Plaintiffs (ECF Nos. 37-39 ). Oral argument on the motion was held on May 15, 2026. (*See* Electronic Order dated 5/15/2026.) For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 32) is **GRANTED**.

## FACTUAL BACKGROUND

As an initial matter, Defendant asks the Court to deem its 56.1 Statement as admitted because Plaintiffs did not file an opposition to the pre-motion conference letter or response to the 56.1 Statement attached thereto. (ECF No. 33 at 2 n.2.) The Local Rules for the Eastern & Southern Districts of New York provide,

> (a) Unless the court orders otherwise, on motion or on its own, any motion for summary judgment under Fed. R. Civ. P. 56 must be accompanied by a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion. This rule

2

does not apply to claims brought under the Administrative Procedure Act or the Freedom of Information Act.

(b) The papers opposing a motion for summary judgment must include a correspondingly numbered paragraph admitting or denying, and otherwise responding to, each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried.

(c) Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically denied and controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.

Loc. Civ. R. 56.1 (a)-(c).

The Court declines to deem all of Defendant's facts admitted, since a 56.1 statement was ultimately filed with the motion. *See Harry v. Rodriguez*, No. 22-CV-03995 (NCM) (SDE), 2026 WL 507854, at *4 (E.D.N.Y. Feb. 24, 2026) ("While plaintiff failed to submit a 56.1 counterstatement in his response to defendants' PMC request, he nevertheless submitted a statement of facts with his opposition to summary judgment. … Indeed, courts in this circuit have considered the merits of a plaintiff's claim even when he fails to submit a counterstatement altogether."); *see also Exeter Holdings, Ltd. v. Haltman*, No. 13-CV-5475 (JS)(AKT), 2020 WL 4587533, at *2 (E.D.N.Y. Apr. 21, 2020), *report and recommendation adopted sub nom. Off. Comm. of Unsecured Creditors of Exeter Holding, Ltd. v. Haltman*, No. 13-CV-5475(JS)(AKT), 2020 WL 2832192 (E.D.N.Y. June 1, 2020) ("Accordingly, in the exercise of its discretion, and in light of the posture of this case and these motions, the Court will overlook this defect and will deem admitted only those facts in Defendant's Rule 56.1 Statement which are supported by admissible evidence and not controverted by other admissible evidence in the record.")

3

The following facts are taken from the parties' Local Rule 56.1 statements and corresponding responses and are uncontested unless otherwise noted.[1]

A. *The Parties*

Morocho is a 35-year-old male who resides in Hempstead, New York. (ECF No. 43 at ¶¶ 1-3.) He worked at a jewelry store in Hempstead performing maintenance work, and before that he worked at North Shore Farms, a supermarket, from approximately 2021 until July 2024. (*Id.* at ¶¶ 5-9.) While employed at North Shore Farms, Morocho's duties included loading, unloading, and restocking produce weighing approximately 50 to 60 pounds, which involved bending and lifting. (*Id.* at ¶ 8.)

Diaz is a 33-year-old female who was born in El Salvador and came to the United States in approximately June 2014. (*Id.* at ¶¶ 140-141.) In January 2022, Diaz lived in Roosevelt, New York and worked at North Shore Farms, where she had been employed since approximately

---

[1] The facts set forth above are taken from the parties' respective Rule 56.1 statements and corresponding responses. *See* ECF Nos. 34 (Defendant's 56.1 statement), 37-4 (Morocho's Rule 56.1 response and statement), 39-3 (Diaz's 56.1 response and statement), 43 (Defendant's combined Rule 56.1 counterstatements), and 44 (Defendant's combined responses to Plaintiffs' 56.1 statement).

Unless otherwise noted, a standalone citation to a party's Rule 56.1 statement means that the Court has deemed the underlying factual allegation undisputed. Any citation to a Rule 56.1 statement incorporates by reference the documents cited therein. Where relevant, however, the Court may also cite directly to an underlying document. The Court has deemed true undisputed facts averred in a party's Rule 56.1 statement to which the opposing party cites no admissible evidence in rebuttal. *See Stewart v. Fashion Inst. of Tech.*, No. 18-CV-12297 (LJL), 2020 WL 6712267, at *8 (S.D.N.Y. Nov. 16, 2020) ("'[P]ursuant to Local Civil Rule 56.1 [the movant's] statements are deemed to be admitted where [the non-moving party] has failed to specifically controvert them with citations to the record.'") (quoting *Knight v. N.Y.C. Hous. Auth.*, No. 03-CV-2746 (DAB), 2007 WL 313435, at *1 (S.D.N.Y. Feb. 2, 2007)); *Lumbermens Mut. Cas. Co. v. Dinow*, No. 06-CV-3881 (TCP), 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 28, 2012) ("Local Rule 56.1 requires . . . that disputed facts be *specifically* controverted by admissible evidence. Mere denial of an opposing party's statement or denial by general reference to an exhibit or affidavit does not specifically controvert anything."). "Additionally, to the extent [a party's] 56.1 statement 'improperly interjects arguments and/or immaterial facts in response to facts asserted by [the opposing party] without specifically controverting those facts,' the Court has disregarded [such] statements*.*" *McFarlane v. Harry's Nurses Registry*, No. 17-CV-06350 (PKC) (PK), 2020 WL 1643781, at *1 n.1 (E.D.N.Y. Apr. 2, 2020).

2016 preparing and cooking food. (*Id.* at ¶¶ 143-146.) Now, Diaz still lives in Roosevelt but at a different location. (*Id.* at ¶ 142.)

Morocho and Diaz were coworkers at North Shore Farms. (*Id.* at ¶ 13.)

B. *The January 3, 2022 Accident*

On January 3, 2022, Morocho was driving his father's 2008 Toyota RAV4 (the "RAV4"), which was insured through Kemper Insurance. (*Id.* at ¶¶ 10-11.) Plaintiffs were in the RAV4 when Morocho was driving them from North Shore Farms to Diaz's house. (*Id.* at ¶¶ 12, 158.) Diaz was seated in the front passenger seat. (*Id.*) Morocho had driven Diaz home from work on multiple occasions. (*Id.* at ¶¶ 14, 153.)

Morocho was driving on Jerusalem Avenue toward Hempstead, which has four lanes, two lanes travelling in one direction and two in the other. (*Id.* at ¶¶ 15, 17.) The direction he was driving had two travelling lanes and one lane for parking. (*Id.* at ¶ 18.) Morocho does not recall how fast he was driving or the speed limit. (*Id.* at ¶ 16.) Morocho was driving in the left lane of Jerusalem Avenue prior to the accident, where he observed a United States Postal Service ("USPS") postal truck traveling ahead of his vehicle in the right lane of Jerusalem Avenue the entire time prior to the impact. (*Id.* at ¶¶ 19-20.)

The postal truck was not driving faster than Morocho but was attempting to make a u-turn in front of him. (*Id.* at ¶¶ 23-24, 163.) Diaz remembers Morocho drove 30-35 miles per hour. (*Id.* at ¶ 157.)  The postal truck did not have lights on, including the blinker. (*Id.* at ¶ 170.) "The postal vehicle suddenly sped up fast out of its parked position trying to cross to the other side of the road, across the double yellow lines." (*Id.* at ¶ 171.) "The impact between the postal truck and Morocho's vehicle occurred between the left of the postal truck and the right back door and front passenger side of the RAV4. No part of the RAV4 fell off after impact." (*Id.* at ¶¶ 24-

5

25.)  The impact was heavy. (*Id.* at ¶ 26.) Morocho in an attempt to avoid the accident, "hit the brakes [very hard], honked his horn, and tried to swerve to the left." (*Id.* at ¶¶ 27, 29, 172-73.) He then "swerved over the double yellow lines into the direction of oncoming traffic," and at the time, there were no cars from the opposite direction. (*Id.* at ¶ 28.) No airbags were deployed. (*Id.* at ¶¶ 31, 199.)  Diaz remembered the accident took place at approximately 2:00 or 3:00 p.m, and "it was cold, clear, light outside, and the traffic was light." (*Id.* at ¶¶ 149-50.)  The postal truck hit Diaz's side of the car. (*Id.* at ¶ 178.) At the time of impact, Diaz's "body moved left and then right, where she hit her right shoulder against the right passenger door, her neck moved forward and then back, [and she] felt the impact in her lower back." (*Id.* at ¶¶ 181-83.)  Diaz placed both hands in front of her but only her knees touched the bottom of the glove compartment box. (*Id.* at ¶¶ 184-85.)

Morocho's seatbelt restrained him upon impact, and his body moved from left to right and then front after impact.  (*Id.* at ¶¶ 34-35.)  Morocho's left shoulder hit his driver's side door upon impact and no other body part was hit. (*Id.* at ¶¶ 36-37.)  Morocho did not lose consciousness after the impact or feel any immediate pain. (*Id.* at ¶¶ 38-39.)  Diaz did not lose consciousness either but did pain right after. (*Id.* at ¶ 187.)  Plaintiffs stepped out of the car after the impact and Morocho did not see if Diaz was injured.  (*Id.* at ¶¶ 40-41.)  While Morocho called the police after the accident, the operator could not understand him due to a language barrier and so, he called his father who arrived at the scene. (*Id.* at ¶¶ 42-44.)  Morocho took photos of the scene of the accident, and a male witness called the police. (*Id.* at ¶¶ 45-46.)  Police arrived approximately five to fifteen minutes after the accident occurred. (*Id.* at ¶¶ 47, 197.) The RAV4 was "drivable" after the accident and Morocho moved the car after the police arrived. (*Id.* at ¶¶ 49-50.)  "Morocho reported to the police officer that he didn't have any injuries," and

went home after. (*Id.* at ¶¶ 52-53.) However, later that night, "Morocho started to feel body aches, including pain in the back, neck, shoulders, and both arms, that was dull and sharp, and he had numbness and tingling in both arms" resulting in him not having the strength to elevate his left arm. (*Id.* at ¶¶ 54-56.) He complained of further pains in his neck and back. (*Id.* at ¶¶ 57-63.) Morocho did not go to the hospital after the accident or see any medical provider the day of the accident. (*Id.* at ¶¶ 66-67.) Diaz did not request an ambulance because there was no blood. (*Id.* at ¶ 205.) Diaz did not see a medical provider until three or four days after the accident. (*Id.* at ¶ 213.)

USPS driver Paul Lowenthal ("Lowenthal") "testified that he was parked at a curb before the accident occurred to deliver mail in the parking lane prior to the accident and he began to move his vehicle into the moving lane immediately to his left where the impact allegedly occurred." (ECF No. 44 at ¶ 3.) Lowenthal further testified that "the postal vehicle was parked in the parking lane prior to the accident, and he began to move his vehicle into the moving lane immediately to his left where the impact allegedly occurred, which is not the same lane of travel as Morocho and Diaz testified to." (*Id.* at ¶ 4.)

C. *Morocho's Medical Treatment*

For background, before the January accident, played soccer, volleyball and went to the gym; following the accident he continued with these activities, with the exception of the gym. (ECF No. 43 at ¶¶ 88-89.) Morocho can do house chores and lift up to twenty-five pounds. (*Id.* at ¶ 92.) At work, he continued stocking the shelves; however, the amount he would lift decreased after the accident. (*Id.* at ¶ 94.)

Two days after the accident, on January 5, 2022, Morocho treated with chiropractor Nestor Nicolaides, D.C., at MRNN Chiropractic and Physical Therapy, PLLC ("MRNN

Chiropractic"). (*Id.* at ¶ 96.) Defendant stated that the first doctor Morocho went to after the accident was for electromagnetic therapy massages. (*Id.* at ¶ 69.) However, Morocho disputes that because he was first evaluated by Chiropractor Nestor Nicolades on January 5, 2022, at the office of MRNN Chiropractic and Physical Therapy, P.C." (*Id.*)  Yet, it was that doctor who recommended massages and other treatments. (*Id.*)  At that initial visit, Morocho reported momentary loss of consciousness after the accident and complaints of pain in his upper back, middle back, left shoulder, neck, and lower back. (*Id.* at ¶¶ 97-98.) Dr. Nicolaides diagnosed, among other things, brachial neuritis or radiculitis, lumbosacral neuritis or radiculitis, thoracic, lumbar, and cervical sprain/strain, cervicalgia, lower back pain, thoracic pain, intervertebral disc pathology, and cervical, thoracic, and lumbosacral subluxation. (*Id.* at ¶ 99.) Morocho underwent chiropractic treatment at MRNN Chiropractic from January 5, 2022, through August 17, 2022. (*Id.* at ¶ 100.)

Morocho received injections from Rutman Medical and Bowen MD PLLC to his left shoulder, his neck, and his back. (*Id.* at ¶¶ 74-75.) "At Rutman Medical the Plaintiff was seen on February 14, 2022, and received trigger point injections in his right gluteal muscles and right lumbar paraspinal muscles. On February 28, 2022, at Rutman Medical Plaintiff received bilateral cervical and trapezius trigger point injections as well as left gluteal and left lumbar paraspinal injections, On Rutman Medical on May 4, 2022, Plaintiff received trigger point injections in the bilateral cervical paraspinal, trapezius and thoracic paraspinal muscles. On September 7, 2022, Plaintiff received a cervical epidural injection at ASC of Rockaway Beach. On November 2, 2022, he underwent a lumbar epidural injection at 12 Bowen MD PLLC." (*Id.* at ¶¶ 75, 107-109, 122-123.) Morocho went to physical therapy, and "was told by the provider who gave him electromagnetic therapy messages that the injections he underwent were considered surgeries."

(*Id.* at ¶¶ 78-80.) However, Morocho on October 4, 2022, underwent a percutaneous cervical discectomy and annuloplasty with Dr. Matthew Kohler at Bowen MD PLLC. (*Id.* at ¶ 82.)

From January 12, 2022, through February 16, 2022, Morocho attended six physical therapy sessions at 21 Physical Therapy, P.C, and "Morocho attended PT at MRNN Chiropractic from February 28, 2022, through January 2, 2023, approximately two times per week." (*Id.* at ¶¶ 101, 106.) On February 16, 2022, electrodiagnostic testing performed at MRNN Chiropractic revealed evidence of left C7 radiculopathy and no peripheral neuropathy. (*Id.* at ¶ 102.) On February 24, 2022, Morocho underwent MRIs of the cervical and lumbar spine, which the cervical MRI reported "(1) straightened cervical lordosis; (2) C5-6 central 5 mm disc herniation with central spinal stenosis; and (3) C6-C7 central 5 mm disc herniation with central spinal stenosis," and the lumbar spine MRI reported "(1) transitional vertebrae of the lumbosacral junction; (2) L4-L5 central 5 mm disc herniations with central spinal stenosis; and (3) L5-S1 central 5 mm disc herniation with central spinal stenosis." (*Id.* at ¶¶ 103-104.) "On February 28, 2022, Dr. Nicolaides performed electrodiagnostic testing (EMG/NCV/SSEP) at MRNN Chiropractic and concluded that the study revealed no evidence of peripheral neuropathy or lumbosacral radiculopathy." (*Id.* at ¶ 105.)

On March 3, 2022, he underwent an MRI of the left shoulder, which reported impingement, a partially torn anterior labrum, and tendinosis/tendonitis with intrasubstance tearing of portions of the rotator cuff. (*Id.* at ¶ 116.) On March 21, 2022, he treated at SEN Orthopedics, where left shoulder arthroscopy was recommended, but Morocho declined that surgery and did not have follow-up appointments there. (*Id.* at ¶¶ 117-119.) On April 28, 2022, Morocho underwent an independent medical examination conducted by Dr. Vijay S. Sidhwani, D.O., a pain management specialist, at the request of his insurer. (*Id. at* ¶ 120.) Following the

9

examination, Dr. Sidhwani concluded that no further causally related pain management treatment or physical therapy was reasonable or medically necessary. (*Id.* at ¶ 121.) Dr. Sidhwani further opined that Morocho's left shoulder, neck, back, and right knee conditions had reached a therapeutic endpoint and that Morocho's subjective complaints were not substantiated by objective medical findings. (*Id.*) According to Dr. Sidhwani, Morocho had returned to his pre-accident condition and was not disabled as a result of the January 3, 2022, accident. (*Id.*) Dr. Sidhwani also concluded that Morocho was capable of working without restrictions and performing his activities of daily living without limitation. (*Id.*)

"On May 10, 2022, Morocho underwent an independent chiropractic examination by chiropractor Dr. Michael N. Berke ("Dr. Berke") of Longevity Health Services, at the request of Kemper Insurance." (*Id.* at ¶ 124.) "Dr. Berke performed a physical and neurological examination and concluded that Morocho's cervico-thoracic and lumbar sprain/strain were resolved and 'claimant does not demonstrate any objective disability and may continue his work duties and normal daily living activities without restriction,' 'pain reported did not correlate with any objective findings,' and 'claimant's spinal condition requires no further treatment from a chiropractic point of view.'" (*Id.* at ¶ 125.) "On August 4, 2022, Morocho treated with physician assistant Derosena Reginald at Bowen MD, a pain management practice located in Forest Hills, NY, where he reported cervical spine pain to be 5 out of 10 and lumbar spine pain to be 4 out of 10." (*Id.* at ¶ 126.) In September and November of 2022, Morocho received further injections. (*Id.* at ¶¶ 127, 129.) "After November 2, 2022, Morocho did not treat with any providers at Bowen MD, PLLC or have any further follow up appointments." (*Id.* at ¶ 130.) Morocho's medical treatment was paid by Kemper Insurance in the sum of $17,521.46 in connection with the alleged injuries for the Accident. (*Id.* at ¶ 131.)

Morocho did not have treatment with "any medical provider for his left shoulder, neck, or back since approximately December of 2022 or January of 2023 because his pain had improved and '[t]he pain was low.'" (*Id.* at ¶ 95.) Indeed, "[o]n January 13, 2023, Morocho was discharged from Dr. Nicolaides' practice due to 'plateau being reached.'" (*Id.* at ¶ 108.)

### D. *Diaz's Medical Treatment*

Diaz first sought treatment on January 5, 2022, two days after the accident, when she was treated by Dr. Nicolaides at MRNN Chiropractic. (*Id.* at ¶¶ 259-60.) At that visit, Diaz reported that she had been the front-seat passenger in a vehicle "struck from the right side by a truck that was making a U-turn," stated that she experienced momentary loss of consciousness, and complained of headaches and pain in her neck, right shoulder, right elbow, upper back, middle back, and lower back. (*Id*. at ¶¶ 260-61.) "Dr. Nicolaides diagnosed Diaz with Brachia neuritis or radiculitis – M54.1 Lumbosacral neuritis or radiculitis – M54.17 Sprain/Strain Thoracic – S23.3XXA Sprain/Strain Lumbar – S33.3XXA Sprain/Strain Cervical – S13.3XXA –Cervalgia – M54.2 Lower back pain – M54.40 Thoracic Pain – M54.6, Intervertebral Disc Pathology M51.37 Displacement of Intervertebral disc without mylopathy -M51.26 Cervical Subluxation M99.11 Thoracic Subluxation M99.12 Lumbosacral Subluxation M99.13." (*Id*. at ¶ 262.) Diaz began physical therapy until September 21, 2022, and chiropractic treatment until October 7, 2022. (*Id.* at ¶¶ 263-67.) "On January 10, 2022, Diaz reported a pain level between 7 and 8 out of a scale of 10 to her neck, middle back, lower back, right shoulder, and right hip. , [and on] her last day of chiropractic treatment on October 7, 2022, Diaz reported a pain level of 5 out of a scale of 10 to her neck, middle back, lower back, right shoulder." (*Id.* at ¶¶ 268-69.) As a result, she was referred to pain management to see specialist Matthew Rutman, DO at Rutman Medical. (*Id.* at ¶

11

270.) Diaz began pain management treatment but refused trigger injections while complaining of high pain levels (8 out of 10). (*Id.* at ¶¶ 271-73.)

On February 16, 2022, electrodiagnostic testing revealed evidence of right L4-L5 radiculopathy and no evidence of peripheral neuropathy. (*Id.* at ¶ 275.) On February 21, 2022, additional electrodiagnostic testing revealed no evidence of cervical radiculopathy or peripheral neuropathy. (*Id.* at ¶ 276.) On February 24, 2022, Diaz underwent MRIs of the cervical and lumbar spine; the cervical MRI showed no focal disc pathology, while the lumbar MRI revealed annular disc bulges at L4–L5 and L5–S1 with thecal sac effacement. (*Id.* at ¶¶ 277–78.) On March 3, 2022, Diaz underwent an MRI of the right shoulder, which reported, "(1) Hypoplastic anterior and posterior labrum. The biceps tendon is hypoplastic; (2) Tendinosis/tendonitis of the supraspinatus and infraspinatus portions of the cuff; (3) Impingement; (4) Axillary lymph nodes noted, which are probably post inflammatory; and (5) Synovitis of the patulous axillary pouch of the inferior glenohumeral ligament." (*Id.* at ¶ 279.)

Diaz treated at SEN Orthopedics on March 21, 2022, where she was diagnosed with right shoulder traumatic impingement syndrome, right shoulder labral tear, and right shoulder rotator cuff tendinitis. (*Id.* at ¶¶ 280-81.) Upon recommendation, on April 5, 2022, Diaz underwent right shoulder arthroscopy. (*Id.* at ¶¶ 283-84.) Post operation visits determined that Diaz was doing better and Diaz reported a lower level of pain (7 out of 10). (*Id.* at ¶¶ 285-86.) "On May 16, 2022, Dr. Sheldon P. Feit, M.D., DABR ("Dr. Feit"), conducted an independent radiology review of Diaz's March 3, 2022 MRI of the right shoulder, [where] Dr. Feit concluded that the MRI revealed, (1) no evidence of rotator cuff tear or fracture; (2) mild chronic supraspinatus and infraspinatus tendinosis; and (3) mild impingement on the supraspinatus muscle secondary to hypertrophic change at the acromioclavicular joint. (*Id.* at ¶¶ 288-89.) "Dr. Feit further

12

concluded '[n]o posttraumatic changes are identified and there are no abnormalities causally related to the accident of 01/03/2022.'" (*Id.* at ¶ 290.) Kemper Insurance requested an independent chiropractic examination by Dr. Berke, a chiropractor. (*Id.* at ¶ 291.) As such, on June 4, 2022, "Dr. Berke performed a physical and neurological examination and concluded that the 'examination fails to reveal any objective findings to substantiate the necessity for further chiropractic treatment' and '[t]he pain reported did not correlate with any objective findings'; Diaz's cervical and thoraco-lumbar sprain and strain were resolved, she did not require any further treatment from a chiropractic point of view, and that she could continue her work duties and normal daily living activities without restriction."

Shortly thereafter, on June 9, 2022, at the request of Kemper Insurance, Diaz had a pain management examination by Dr. Sidhwani. (*Id.* at ¶ 293.) "Dr. Sidhwani performed physical, motor and sensory examinations and range of motion testing, and concluded that Diaz's right shoulder sprain, cervical sprain and strain, and lumbar sprain and strain were resolved, 'claimant's right shoulder, neck and back have reached a therapeutic endpoint to treatment,' 'claimant has reached pre-accident status,' and 'claimant can work without any restrictions and perform her regular activities of daily living without any restrictions.'" (*Id.* at ¶ 294.) "On May 17, 2022, a peer review was conducted by Matthew D. Skolnick, M.D. ("Dr. Skolnick"), a diplomate of American Board of Orthopedic Surgeons, which concluded 'that the surgery of the right shoulder with associated services including post-operative supplies on 04/04/22-04/20/22 was not medically necessary or causally related to the accident of record.'" (*Id.* at ¶ 295.) "Dr. Skolnick's conclusion was based on the findings of the March 3, 2022 MRI of the right shoulder, which (1) 'revealed no rotator cuff or labral tears', (2) 'degenerative changes were noted with no rotator cuff tear seen and there were no findings of post traumatic injury indicated'; and finding

13

that 'there is no evidence that the claimant's right shoulder was deteriorating despite receiving a course of conservative treatment.'" (*Id.* at ¶ 296.)

At Diaz's last appointment with SEN Orthopedics, which was on July 22, 2022, she denied any pain and reported significant improvement. (*Id.* at ¶ 297.) Kemper Insurance denied full payment for the right shoulder arthroscopy as "there was no medical necessity for right shoulder surgery and all treatment associated with the right shoulder surgery." (*Id.* at ¶ 298.) "Kemper Insurance paid $46,071.16 for Diaz's medical treatment in connection with the alleged injuries for the Accident." (*Id.* at ¶ 299.) "On February 11, 2019, Diaz treated with Harmony Health Family Health Center, where she complained of 'left sided back pain for the last 3 weeks, on and off, [that] radiates down her left leg sometimes.'" (*Id.* at ¶ 300.) "On June 22, 2021, Diaz complained of 'recurrent right shoulder pain that is chronic in nature' and 'hurts when elevating shoulder.'" (*Id.* at ¶ 301.) "On October 25, 2022, Diaz complained of 'intermittent left sided low back pain, [that] radiates to her left leg sometimes, has had pain for several months, denies any trauma or bowel or urinary related symptoms, exacerbation from work/lifting sometimes.'" (*Id.* at ¶ 302.) Diaz testified that the treatment she received helped alleviate her shoulder, neck, and back pain, but that she continues to experience limitations in her right shoulder, including an inability to fully elevate it. Diaz is not treating anymore with any provider for the alleged injuries stemming from the accident but continues to complain of lower back pain (5 out of 10) as well as right shoulder pain (6-7 out of 10). (*Id.* at ¶¶ 247-48.) Diaz has not had any neck pain since 2023 and maybe earlier than that. (*Id.* at ¶ 249.)

### E.  *Post-Accident Employment*

With respect to his employment, Morocho worked his regular eight-hour workday on January 5, 2022, missed several days in mid-January 2022, and then returned to regular work,

including some overtime, thereafter. (*Id.* at ¶¶ 134-136.) Morocho testified that he missed five days of work after the accident. (*Id.* at ¶ 93.) He further testified that he continued to restock shelves after the accident. (*Id.* at ¶ 94.)

Diaz went to work for three to four days right after the accident but took off the week after the accident so that she could rest. (*Id.* at ¶¶ 221-22.) However, it was then stated, "Diaz went to work every day at North Shore Farms from January 4, 2022, through January 15, 2022, and worked regular and overtime hours from 6:00 a.m. to 4:00 p.m, with Sundays being her scheduled day off." (*Id.* at ¶ 303.) She submitted a medical note excusing her from work to rest from January 17, 2022, to January 24, 2022. (*Id.* at ¶ 304.) Diaz then worked full-time at North Shore Farms from January 24, 2022, through early April 2022, excluding Sundays, her scheduled day off. (*Id.* at ¶ 306.) Following her shoulder surgery, Diaz was out of work from April 4, 2022, through May 14, 2022, and returned to work on May 16, 2022, without restrictions. (*Id.* at ¶¶ 258, 307-311.)  Diaz also testified that after the accident, she needed help reaching for products or picking up heavy items at work because prior to the accident she could lift 40 pounds while after only 25 pounds. (*Id.* at ¶¶ 244-45.) Diaz has not requested any "restricted duty at work". (*Id.* at ¶ 246.) "Diaz can stand for four hours before the pain bothers her back." (*Id.* at ¶ 250.)

    F.  *Expert Reports*

        a.  *Morocho Expert Reports*

Morocho provided an amended expert report dated May 21, 2025, from Dr. David T. Neuman ("Dr. Neuman"), in which Dr. Neuman examined Morocho on January 28, 2025, but had never treated him. (*Id.* at ¶¶ 312-14.) Dr. Neuman had reviewed relevant medical records including the MRI imaging but "did not identify that he reviewed, (1) any medical records from Dr. Nicolaides after January 5, 2022; (2) photos of the accident; (2) any depositions taken of the

15

Plaintiffs or postal driver; (3) Kemper Insurance records, including IMEs and peer review studies; and (4) any accident reports."  (*Id.* at ¶¶ 315-16.) Dr. Neuman concluded that Morocho's left shoulder injury was caused by "accident forces jammed the left shoulder as the hand was on the steering wheel, and caused soft tissue damage within that joint, to a reasonable degree of medical certainty." (*Id.* at ¶ 317.) Additionally, Dr. Neuman concluded that Morocho "sustained cervical spine and lumbar spine 'soft tissue damage' [and] 'significant loss of function' [in his] cervical spine, lumbar spine, and left shoulder[,] [and] '[t]here is a permanent condition and permanent disability' in the left shoulder, cervical spine and lumbar spine," leading to a recommendation of future treatment/medical care. (*Id.* at ¶¶ 318-21.)

Defendant's expert Diana C. Patterson ("Dr. Patterson") then also reviewed Morocho's "available medical records, pleadings, Plaintiff's responses to interrogatories, photographs, Nassau County Police Department records, depositions, Kemper Insurance records, pharmaceutical records, radiology images and reports, Dr. Neuman's expert report, and performed an independent medical examination of Morocho on December 4, 2024." (*Id.* at ¶ 322.) The parties dispute Dr. Patterson's findings of Morocho's cervical spine and lumbar spine, which she concluded were within normal limits as well as findings of his left shoulder. (*Id.* at ¶¶ 323-25.) There is also a dispute as to Dr. Patterson's conclusion that the accident caused low grade, and short-term strains to Morocho, all of that on which he recovered fully as Dr. Nicolaides concluded otherwise. (*Id.* at ¶ 327.) Dr. Patterson also found that the MRI findings could have been due to the pre-existing conditions of Morocho's job, and he is not currently disabled. (*Id.* at ¶¶ 328-29.)

16

b. *Diaz Expert Reports*

Diaz provided an expert report dated June 20, 2025, from Dr. Neuman, in which Dr. Neuman examined Diaz on May 20, 2025, but had never treated her. (*Id.* at ¶¶ 330-32.) Dr. Neuman reported Diaz had a pain level of 10 out of 10 but did not identify to which body parts the pain was complained of and that Diaz continues to wear a back brace. (*Id.* at ¶¶ 333-34.) "In forming his opinion, Dr. Neuman did not consider Diaz' prior complaints of pain or prior consultation from a medical provider or prior treatment regarding her right shoulder, cervical spine, or lumbar spine." (*Id.* at ¶ 335.) Dr. Neuman reviewed Diaz's medical records and MRI imaging but not "(1) any medical records from Diaz's treating primary care provider Harmony Health; (2) Dr. Nicolaides after January 5, 2022; (3) PT records after February 16, 2022; (4) photos of the accident; (5) any depositions taken of the Plaintiffs or postal driver; (6) Kemper Insurance records, including IMEs and peer review studies; and (7) any accident reports." (*Id.* at ¶¶ 336-37.) "Dr. Neuman concluded that Diaz sustained 'soft tissue was damaged in the neck' and 'soft tissue damage and inflammation occurred in the right shoulder.'" (*Id.* at ¶ 338.) Additionally, Dr. Neuman concluded that "[t]he changes to the right shoulder joint are permanent", "a significant loss of function in the patient's right shoulder, cervical spine and lumbar spine" and "permanent disability in the body parts," leading to a recommendation of future treatment. (*Id.* at ¶¶ 339-40.)

Defendant's expert, Dr. Patterson "reviewed Diaz's available medical records, pleadings, Plaintiff's responses to interrogatories, photographs, Nassau County Police Department records, depositions, Kemper Insurance records, medical supply records, pharmaceutical records, radiology images and reports, Dr. Neuman's expert report, and performed an independent medical examination of Diaz on December 4, 2024." (*Id.* at ¶ 341.) Dr. Patterson examined

17

Diaz's cervical spine and lumbar spine, finding normal limits, and that Diaz's shoulders showed positive signs too. (*Id.* at ¶¶ 342-44.) Diaz complained of continued pain in the relevant body parts, but Dr. Patterson concluded that the accident "did potentially cause low grade, short-term musculoskeletal strains to the Plaintiff's lumbar spine and cervical spine, and mild sprain of the right shoulder, but she has recovered fully from these injuries." (*Id.* at ¶¶ 345-46.) Dr. Patterson also stated that Diaz had pre-existing complaints of her right shoulder but Diaz disputes that as the complaints were minor and did not require treatment. (*Id.* at ¶ 347.) While Dr. Patterson concluded no further treatment will likely be needed, Dr. Neuman determined otherwise. (*Id.* at ¶ 348.)

      *c.  Defendant's Expert*

"Elaine R. Serina, Ph.D., P.E. ("Dr. Serina"), is an expert in accident reconstruction and biomechanics." (*Id.* at ¶ 349.) "Dr. Serina inspected the RAV4 and reviewed the following documents in preparation of her expert report: (1) Plaintiffs' Complaints filed in this action; (2) Plaintiffs' responses to discovery demands; (3) Plaintiffs' and Defendant's initial disclosures; (4) Plaintiffs' expert reports created by Dr. Neuman; (5) Nassau County Police records; (6) USPS accident reports; (7) Plaintiff's and Defendant's depositions; (8) photographs; (9) USPS vehicle maintenance and repair records; (10) RAV4 damage estimates; (11) Defendant's expert reports created by Dr. Patterson; and (12) Plaintiffs' available medical records." (*Id.* at ¶ 350.) Dr. Serina determined that the RAV4 " had experienced a low-speed lateral (side) impact to the right (passenger) side of the vehicle," which Morocho disputes under the Frye standard – not a standard used in federal court. (*Id.* at ¶ 351.) "Dr. Serina opined that the alleged contact between the interior of the RAV4 and Morocho's left shoulder was not likely from the impact forces during the low-speed lateral impact," and "the forces experienced by an occupant in a low-speed

18

lateral impact are low and not sufficient to move the body such that voluntary ranges of motion for the shoulder, neck and back are exceeded." (*Id.* at ¶¶ 352-53.) Dr. Serina found that the low-speed impact could not lead to the injuries while Plaintiffs dispute Dr. Serina's ability to render opinions on causation. (*Id.* at ¶¶ 354-58.)

## THE LEGAL FRAMEWORK

On a summary judgment motion, the movant must demonstrate there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Radwan v. Manuel*, 55 F.4th 101, 113 (2d Cir. 2022). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden is on the movant to demonstrate the absence of a genuine issue of material fact, which can be met by pointing to a lack of evidence supporting the nonmovant's claim. *Celotex Corp. v. Catrett¸* 477 U.S. 317, 323, 325 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Once the movant meets its initial burden, the burden shifts and the nonmovant may defeat the motion only by adducing evidence of specific facts that raise a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250; *Davis v. New York¸* 316 F.3d 93, 100 (2d Cir. 2002). The burden on summary judgment is considered a procedural issue and therefore the Federal Rules apply. Thus, unlike state court where the burden is on the movant, "Defendant need not make any affirmative *prima facie* showing on this motion for summary judgment, and may discharge its burden of proof merely 'by pointing to an absence of evidence to support an essential element of [Plaintiff's] claim.'" *Vasquez v. United States*, No. 14-CV-1510 (DF), 2016 WL 315879, at *5 (S.D.N.Y. Jan. 15, 2016) (internal citations omitted) (emphasis in original).

19

"The Court is to believe the evidence of the non-movant and draw all justifiable inferences in her favor, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts." *Sosa v. New York City Dep't of Educ.*, 406 F. Supp. 3d 266, 268 (E.D.N.Y. 2019) (internal citations omitted). The role of the court at the summary judgment phase is not to *resolve* disputed issues of fact but only undertake an analysis to *identify* whether triable issues of fact exist. *See Kee v. City of New York*, 12 F.4th 150, 167 (2d Cir. 2021). That is, the court's function is "issue-finding," not "issue-resolution." *Carolina Cas. Ins. Co. v. Cap. Trucking Inc.*, 523 F. Supp.3d 661, 668 (S.D.N.Y. 2021) (citing *Gallo v. Prudential Residential Servs., Ltd. P'ship* 22 F.3d 1219, 1224 (2d. Cir. 1994)). *Au fond*, the court's role is to decide whether, "after resolving all ambiguities and drawing all inferences in favor of the nonmovant, a reasonable jury could return a verdict for the nonmovant." *Miller v. N.Y. State Police*, No. 20-3976, 2022 WL 1133010, at *1 (2d Cir. Apr. 18, 2022) (citing *Anderson*, 477 U.S. at 248 and *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127, 129 (2d Cir. 2013)).

It is within this framework that the motion for summary judgment is considered.

## DISCUSSION

"The FTCA waives the Government's sovereign immunity for state law personal injury claims involving the negligence of its employees." *Moore v. United States*, No. 21-CV-4971 (RER) (PK), 2026 WL 546856, at *17 (E.D.N.Y. Feb. 9, 2026); *see also Orelus v. United States*, No. 23-CV-2451 (JMA)(SIL), 2025 WL 2933026, at *6 (E.D.N.Y. Aug. 13, 2025), *report and recommendation adopted*, No. 23-CV-02451 (JMA) (SIL), 2025 WL 2630039 (E.D.N.Y. Sept. 12, 2025) (discussing federal government immunity and exceptions under FTCA). "Actions sued under the FTCA are to be decided 'in accordance with the law of the place where the act or omission occurred.'" *Haust v. United States*, 953 F. Supp. 2d 353, 358 (N.D.N.Y. 2013) 28

20

U.S.C. § 1346(b)(1). "The application of § 1346(b)(1) is that '[t]he liability of the federal government under the FTCA is generally determined by state law.'" *Id.* (quoting *Taylor v. United States,* 121 F.3d 86, 89 (2d Cir.1997)).  Here, the accident occurred in New York, and as such, New York state law applies. Having determined that New York law applies, the Court analyzes whether Defendant is entitled to summary judgment.

Defendant moves for summary judgment on the grounds that (i) Plaintiffs fail to show that their alleged injuries were caused by the accident at issue, (ii) the alleged injuries are not "serious injuries" as defined by N.Y. Ins. Law § 5102(d), and (iii) Plaintiffs do not demonstrate that they incurred more than basic economic loss as set forth in N.Y. Ins. Law § 5104(a). (ECF No. 33 at 1, 5.) Each is separately analyzed.

## I.      *Were Plaintiffs' Injuries Caused by the Accident?*

> New York law requires that plaintiffs … demonstrate that the accident at issue was the cause of the injury. If a defendant moves for summary judgment on the grounds that an accident did not cause the serious injuries in question, that defendant must supply persuasive evidence that the injuries were caused by something else. If the defendant can do so, the burden shifts to the plaintiff, who must come forward with evidence     addressing     defendant's     claimed     lack     of     causation.

*Wirt v. United States*, 732 F. App'x 32, 34–35 (2d Cir. 2018) (internal citations and quotation marks omitted); *see also Comba v. United States*, 535 F. Supp. 3d 97, 111 (E.D.N.Y. 2021) (collecting both New York and federal cases) ("When a defendant submits persuasive evidence that a plaintiff's alleged pain and injuries are related to a pre-existing condition, the plaintiff has the burden to come forward with evidence addressing the defendant's claimed lack of causation; if the plaintiff fails to meet that burden, the defendant is entitled[] to summary judgment.")

Here, Defendant argues that Morocho's medical expert, Dr. Neuman, made conclusory and insufficient findings as well as mischaracterizing the accident itself. (ECF No. 33 at 6.) Likewise, Defendant argues that Dr. Neuman failed to consider alternatives as to the cause of the alleged injuries. (*Id.* at 7.) Defendant further argues that as to Diaz, Dr. Neuman's conclusions "are entirely undermined by Diaz's failure to disclose her prior medical history including

21

recurrent complaints of pain to her right shoulder and lumbar spine prior to the Accident." (*Id.* at

8.) Morocho does not address this argument at length and rather focuses on the assertion that

Morocho has raised a genuine issue of fact under the permanent consequential and significant

limitation category. (ECF No. 36 at 6.) Moreover, Morocho in one sentence asserts that a casual

link has been established between the accident and his injuries shown through the affirmations of

his treating doctors. (*Id.*)  Diaz does the same. Diaz focuses on the serious injury argument and

does not supply the Court with an argument against causation apart from a few statements that

the injuries are casually linked to the accident. (ECF No. 38 at 15, 18.) Defendant's last

argument is that of Dr. Serina's conclusions, which in sum found the low-speed impact could not

have caused the injuries. (ECF No. 33 at 11.) Plaintiffs did not offer an expert to rebut this.

Nonetheless, a review of Dr. Neuman's reports, in the light favorable to Plaintiffs, indicates that

the accident could have caused the injuries. (*See* ECF Nos. 35-16, 35-18.) Dr. Neuman found

that for Morocho,

> [t]he current left shoulder, cervical spine and lumbar spine conditions are causally related to the motor vehicle accident of Jan 03, 2022. There is a permanent condition and permanent disability in the body parts mentioned. The patient would not have these current conditions if they were not involved in this accident. The current left shoulder, cervical spine and lumbar spine conditions are causally related to the motor vehicle accident of Jan 03, 2022. There is a permanent condition and permanent disability in the body parts mentioned. The patient would not have these current conditions if they were not involved in this accident.

(ECF No. 35-16 at 7.)

> Likewise, Dr. Neuman found that for Diaz,

> [t]he current right shoulder, cervical spine and lumbar spine conditions are causally related to the motor vehicle accident of Jan 03, 2022. There is a permanent condition and permanent disability in the body parts mentioned. The patient would not have these current conditions if she was not involved in this accident.

(ECF No. 35-18 at 7.)

22

While Dr. Patterson did not arrive at the same conclusion, she did state that for Morocho, "the motor vehicle accident on January 3, 2022, did potentially cause low grade, short-term musculoskeletal strains to the Plaintiff's lumbar spine and cervical spine…." (ECF No. 35-17 at 5.) However, "he has recovered fully from these injuries," and the MRI findings could "have been pre-existing due to his labor intense job with significant heavy lifting, as well as being moderately obese with an elevated BMI greater than 30." (*Id.* at 5-6.) Dr. Patterson had a similar conclusion for Diaz. (ECF No. 35-19 at 5-6.) Dr. Patterson concluded for Diaz that the accident "did potentially cause low grade, short-term musculoskeletal strains to the Plaintiff's lumbar spine and cervical spine, and mild sprain of the right shoulder, but she has recovered fully from these injuries." (*Id.* at 5.)

Importantly, Dr. Patterson did review additional documents such as the pleadings and other relevant documents provided, whereas Dr. Neuman only reviewed the medical records. In any event, both experts concluded in some fashion that the accident caused some type of injury to both Plaintiffs. However, the Court addresses Defendants' other two arguments. First, medical records show that Diaz reported pain in the injured areas as early as 2019 and 2021. (*See* ECF No. 33 at 9; 35-14 at 3, 5.) Courts have found that the failure to address preexisting or prior injuries could lead to granting summary judgment. *See Franchini v. Palmieri*, 807 N.E.2d 282, 282 (2003) ("Plaintiff's submissions were insufficient to defeat summary judgment because her experts failed to adequately address plaintiff's preexisting back condition and other medical problems, and did not provide any foundation or objective medical basis supporting the conclusions they reached."); *Evans v. United States*, 978 F. Supp. 2d 148, 172 (E.D.N.Y. 2013) ("Similarly, in the instant case, while Dr. Gerard's affidavit states that the January 6, 2010 accident caused the Plaintiff's neck and lower back injuries, her affidavit, medical reports and

23

October 6, 2010 letter do not adequately address the Plaintiff's pre-existing injuries. As such, Dr. Gerard's affidavit is speculative and conclusory with regard to whether the Plaintiff's injuries were causally related to the January 6, 2010 accident."); *see also Luckey v. Bauch*, 792 N.Y.S.2d 624, 625 (N.Y. App. Div. 2d Dep't 2005) (granting summary judgment for defendants and discussing prior undisclosed accidents) ("the affirmed medical report of her expert failed to adequately account for the injuries to the plaintiff's neck and back as a result of two other motor vehicle accidents"). The same applies in New York cases, where the burden is on plaintiff to show that the preexisting conditions were not the cause of the injury rather than the accident at issue. *See Lagois v. Pub. Adm'r of Suffolk Cnty.*, 760 N.Y.S.2d 52, 53 (N.Y. App. Div. 2d Dep't 2003) (internal citation omitted) ("In the absence of an explanation by the plaintiff's expert as to the significance of the pre-existing conditions and degenerative findings, it would be sheer speculation to conclude that the accident of December 28, 1997, was the cause of the plaintiff's injuries."); *Moore v. Maley*, 242 N.Y.S.3d 594, 598 (N.Y. App. Div. 1st Dep't 2025) ("To meet his burden, the plaintiff must address the evidence of preexisting conditions 'and explain why [his] current reported symptoms [are] not related to the preexisting conditions' or how the accident aggravated his underlying degenerative conditions."). Yet, one New York case found the opposite. *See Pommells v. Perez*, 830 N.E.2d 278, 285 (N.Y. 2005) ("Second, as to an alleged preexisting condition, there is only Dr. Berkowitz's conclusory notation, itself insufficient to establish that plaintiff's pain might be chronic and unrelated to the accident.") As Plaintiff Diaz avers, the preexisting complaints were job-related and temporary. (ECF No. 38 at 7.)

Second, Defendant's expert Dr. Serina concluded that the low-speed impact could not have resulted in the alleged injuries. (*See* ECF No. 35-20 at 14.) As explained, Plaintiffs did not

offer evidence to rebut that expert conclusion. The only expert reports that Plaintiffs relied upon is that of Dr. Neuman. "Courts in this Circuit routinely preclude a treating physician's opinion testimony as to causation where the physician did not conduct a 'meaningful '*differential diagnosis*' ruling out other possible contributing factors' to an injury." *Barth v. United States*, No. 22-CV-1155 (NJC) (JMW), 2025 WL 2753721, at *9 (E.D.N.Y. Sept. 29, 2025), *appeal withdrawn*, No. 25-2510, 2025 WL 4041908 (2d Cir. Dec. 15, 2025) (quoting *Munafo v. Metro. Transp. Auth.*, No. 00-cv-0134, 2003 WL 21799913, at *18 (E.D.N.Y. Jan. 22, 2003)); *see also Johnson v. United States*, No. 21-CV-2851 (MKB), 2024 WL 1246503, at *6 (E.D.N.Y. Jan. 16, 2024) (internal citation omitted) (collecting cases) ("Thus, Dr. Leo's opinion on the causal relationship was based solely on Plaintiff's inaccurate subjective reports of her history, rendering his causation conclusion 'speculative' and 'conjectural.'"); *Alvarez v. United States*, No. 21-CV-4766 (GRB)(ARL), 2024 WL 1494556, at *6 (E.D.N.Y. Apr. 4, 2024) (citing New York law) ("Dr. Madhok's conclusory opinions concerning causation—which, as discussed, were woefully unsupported and undocumented—were ultimately 'subjective in nature as they were dependent, at least in part, on plaintiff's complaints of pain,' and therefore insufficient to establish causation.")

At oral argument, Plaintiffs averred that a biomechanic expert may not testify as to causation relying principally on *Jeffery v. Queen City Foods, LLC*, 153 N.Y.S.3d 326 (N.Y. App. Div. 4th Dep't 2021). However, while supportive of that proposition, it is not binding. *See AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 139 n. 15 (2d Cir. 2018) (internal citations omitted) ("We are not required to follow any of those decisions, however. 'We are bound, as was the district court, to apply the law as interpreted by New York's intermediate appellate courts ... unless we find persuasive evidence that the New York Court of Appeals, which has not ruled on

25

this issue, would reach a different conclusion.'"); *see also Roldan v. Lewis*, No. 20-CV-03580 (HG) (MMH), 2025 WL 676090, at *18 (E.D.N.Y. Mar. 3, 2025) (internal citation omitted) ("As to the decisions of intermediate courts like the Appellate Division, they are 'a basis for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'")

The Second Department, however, differs from the view of the Fourth. *See e.g.*, *Vasquez v. Coastal Charter Serv. Corp.*, 238 N.Y.S.3d 523, 524 (N.Y. App. Div. 2d Dep't 2025) ("biomechanical experts are qualified to render opinions on causation"); *Plate v. Palisade Film Delivery Corp.*, 835 N.Y.S.2d 324 (N.Y. App. Div. 2d Dep't 2007) ("The Supreme Court erred in its determination that the defendants' biomechanical engineering expert was not qualified to testify regarding whether the force of the impact in the subject accident could have caused a serious injury or exacerbated a preexisting injury to the plaintiff's cervical spine and in precluding that testimony"); *Valentine v. Grossman*, 724 N.Y.S.2d 504, 505–06 (N.Y. App. Div. 2d Dep't 2001) (discussing same on relevancy grounds); *see also Du v. Party Perfect Rentals LLC*, 731 F. Supp. 3d 392, 399 (E.D.N.Y. 2024) (internal citations omitted) ("It is well settled that biomechanical experts are permitted to opine as to general causation of injuries in motor vehicle accident cases; *i.e.*, whether the force sustained by a plaintiff in the subject accident could potentially cause certain injuries. Courts, however, 'have not permitted biomechanical experts to testify regarding specific injury causation, or the specific cause of a particular injury, *unless the expert has medical training*.'"); *Evers v. Hoffman*, No. 25-CV-2423 (JAM), 2026 WL 555407, at *5 (E.D.N.Y. Feb. 27, 2026) (same).

Dr. Neuman focused on the accident and there was no discussion of alternative methods. (*See generally*, ECF Nos. 35-26, 35-18.)  Dr. Neuman's review was limited to the subjective pain

26

and complaints provided by Plaintiffs and their medical records. However, Dr. Patterson found that the accident did potentially cause low grade injuries.  Moreover, as this Court found in similar circumstances,

> Contrary to Defendants' arguments, however, Plaintiff does provide *objective medical evidence* that links Plaintiff's injuries to the accident, satisfying his rebuttal burden at this stage. As Plaintiff correctly notes, Drs. Kaisman and McMahon were not required to specifically refute Defendants' biomechanical expert as to the forces involved in the accident in order to meet his burden. Instead, Plaintiff's experts provided medical testimony based on objective evidence, including Plaintiff's medical history, MRI films, and their own procedures and examinations to conclude that Plaintiff's injuries were caused by the collision. … *Whether the factfinder chooses to credit Defendants' biomechanical expert, Plaintiff's medical experts, or something else entirely is not for the Court to resolve at this stage.* For purposes of summary judgment, Plaintiffs have raised a triable issue of fact as to causation, and summary judgment is denied.

*Jung v. Kelly*, No. 16-CV-6097 (PK), 2020 WL 7024395, at \*11–12 (E.D.N.Y. Nov. 30, 2020) (internal citations omitted) (emphasis added).

The Court afforded the parties the opportunity to file supplemental briefing on the issues raised at oral argument. However, only Defendant chose to submit an additional letter brief. (*See* ECF No. 47.) While Defendant argues that *Jung* supports the causation analysis in the instant case, the Court finds it does not. Defendant asserts that in *Jung*, the plaintiff's expert provided objective medical evidence to establish causation, addressed any gaps in treatment, and considered alternative causes to the injuries. (*Id.* at 4.) Here, Defendant argues that Dr. Neuman did not provide any of the above. (*Id.*)  Although Dr. Neuman's findings are not as comprehensive as those of the expert in *Jung*, Defendant fails to acknowledge that its own expert, Dr. Patterson, found that the accident did potentially cause low grade injuries. In other words, Defendant cannot rely on *Jung* to show that Plaintiffs' injuries were not caused by the accident to entitle it to summary judgment when its own expert finds otherwise. Given that, there are issues of fact as to causation that would be better suited for trial. Indeed, the Court in *Jung*

27

denied summary judgment as "Plaintiffs [had] raised a triable issue of fact as to causation." *Jung*, 2020 WL 7024395, at *12.

Accordingly, there are genuine issues of material fact in dispute as to causation that are best suited for trial.

## II.   *Are Plaintiffs Injuries "Serious" to Satisfy the Threshhold?*

Next, Defendant contends if the Court finds Plaintiffs have established causation, the "serious injury" threshold nevertheless has not been met. (ECF No. 33 at 12.) Defendant argues that neither Plaintiff sustained a serious injury (*id.* at 14, 17), which Morocho and Diaz dispute (ECF Nos. 36 at 6; 38 at 17-18).

The New York Court of Appeals "has long recognized that the 'legislative intent underlying the No–Fault Law was to weed out frivolous claims and limit recovery to significant injuries.' … As such, we have required objective proof of a plaintiff's injury in order to satisfy the statutory serious injury threshold; subjective complaints alone are not sufficient." *Toure v. Avis Rent A Car Sys., Inc.*, 774 N.E.2d 1197, 1199–200 (N.Y. 2002) (internal citations omitted). "Whether an injury is 'serious' within the meaning of Insurance Law § 5102(d) is an inquiry distinct from whether the injury was caused by the accident, and a defendant need not establish a lack of one to establish, prima facie, a lack of the other." *Fernandez v. Sukhdeep*, 251 N.Y.S.3d 28, 31 (N.Y. App. Div. 1st Dep't 2026) (internal citation omitted) ("Either is sufficient to meet defendants' prima facie burden, and dictates the showing a plaintiff must make to raise an issue of fact.")

> A serious injury is defined, in relevant part, as a permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for

28

at least ninety day in the one hundred and eighty days immediately following the injury.

*Vadnais v. United States*, No. 21-CV-0012 (KHP), 2024 WL 1101823, at *4 (S.D.N.Y. Mar. 13, 2024) (citing N.Y. Ins. Law § 5102) (internal citations omitted); *see also Johnson*, 2024 WL 1246503, at *7–8 (same).[2]

"Moreover, New York courts require 'objective proof of a plaintiff's injury in order to satisfy the statutory serious injury threshold.'" *Alim v. United States*, No. 21-CV-2234 (LJL), 2023 WL 2929380, at *20 (S.D.N.Y. Apr. 13, 2023) (quoting *Toure*, 774 N.E.2d at 1199). "[T]he purpose of enacting an objective verbal definition of serious injury was to 'significantly reduce the number of automobile personal injury accident cases litigated in the courts, and thereby help contain the no-fault premium.'" *Id.* (quoting *Licari v. Elliott*, 441 N.E.2d 1088, 1091 (N.Y. 1982)). A Plaintiff "may not rely exclusively on subjective complaints as evidence of a 'serious injury,' and must offer some form of objective proof of a physiological injury." *Id.* (quoting *Ruffin v. Rana*, 2013 WL 4834368, at *7 (S.D.N.Y. Sept. 4, 2013)).

Here, Plaintiffs' expert Dr. Neuman stated that there were permanent conditions and disabilities to body parts. (ECF Nos. 37-9 at 4; 39-8 at 7.) However, Dr. Patterson concluded that for Morocho any "low grade, short-term musculoskeletal strains to the Plaintiff's lumbar spine and cervical spine," that were caused are now fully recovered, and any MRI findings may have been caused by his manual labor occupation. (ECF No. 35-17 at 5.) Likewise, Dr. Patterson concluded the same for Diaz and also noted "she did not mention this motor vehicle accident to

---

[2] New York's no-fault statute specifically identifies nine types of "serious injuries" [for which one can sue]: (1) "significant disfigurement"; (2) a "permanent loss of use of a body organ, member, function, or system"; (3) a "permanent consequential limitation of use of a body organ or member"; (4) a "significant limitation of use of a body function or system"; … ; (6) "death"; (7) "dismemberment"; (8) "fracture"; and (9) the "loss of a fetus."

*Flores v. Bergtraum,* No. 20-CV-1240 (KMK), 2022 WL 125372, at *8 (S.D.N.Y. Jan. 13, 2022), *aff'd,* No. 22-CV-260, 2023 WL 3047968 (2d Cir. Apr. 24, 2023) (internal citations omitted).

her PCP when she presented for complaints of mild left lumbar back pain in October 2022, nor did she mention having undergone shoulder surgery." (ECF No. 35-19 at 5-6.) Moreover, Diaz has not adequately explained the gap of three years in treatment. *But see Farris v. Caygan*, 225 N.Y.S.3d 727, 728 (N.Y. App. Div. 2d Dep't 2025) ("[T]he plaintiff provided a reasonable explanation for any alleged gap in treatment.")

Additionally, both Plaintiffs continued to work, are not disabled and have stopped treatment for years now. (*See* ECF Nos. 35-17 at 5; 35-19 at 5-6.) While Plaintiffs attached charts of loss of normal ranges (*see* ECF Nos. 36 at 7-9; 38 at 10), there is no evidence of permanent injuries. Plaintiffs also had not sought medical attention after the accident and Morocho reported no injuries to the police officer. (*See* ECF No. 43 at ¶¶ 52-63, 66-67, 205, 213.) At oral argument, Plaintiffs did not overcome the burden once Defendant pointed to the fact that treatment has stopped and that Plaintiffs have continued working and/or doing physical activities. *See Orelus v. United States*, No. 23-CV-2451 (JMA)(SIL), 2025 WL 2933026, at *9 (E.D.N.Y. Aug. 13, 2025), *report and recommendation adopted*, No. 23-CV-02451 (JMA) (SIL), 2025 WL 2630039 (E.D.N.Y. Sept. 12, 2025) ("Accordingly, Orelus has not demonstrated a genuine issue of material fact that he suffered serious injury according to this criterion, and summary judgment is appropriate.")

Accordingly, Plaintiffs have not established the serious injury threshold or even that there are questions of fact for trial on the issue.[3]

---

[3] Lastly, Defendant avers that Plaintiffs cannot recover any damages for economic loss as Plaintiffs cannot show that they have sustained any economic loss in excess of the basic economic loss as required by New York's No-Fault law. (ECF No. 33 at 22-23.) "The No–Fault Law provides for tort recovery for economic loss that exceeds $50,000. N.Y. Ins. Law §§ 5102(a), 5104. Economic loss covered in the statute encompasses medical costs, lost wages, and reasonable and necessary expenses. N.Y. Ins. Law § 5102(a)." *Rookwood v. Valdez*, No. 99-CV-10285(SAS)(JCF), 2001 WL 776939, at *3 (S.D.N.Y. July 11, 2001). A party may recover for non-economic losses such as pain and suffering, if a serious injury is found. *See id.* However, Plaintiffs did not address this in their motion papers and conceded at oral

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 32) is

**GRANTED**. The Clerk of the Court is respectfully directed to enter judgment in favor of

Defendant and close the case.

Dated:  Central Islip, New York.
June 11, 2026

S O   O R D E R E D:

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge

---

argument that this is not at issue, and their losses do not exceed the amount.

31